UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| BRYAN S. BLEVINS, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. 3:22-cv-118 |
| v. | ) |
| | ) Judge Atchley |
| TENNESSEE DEPARTMENT OF CORRECTIONS, CENTURION MEDICAL SERVICES, MEDICAL CONTRACT, and TDOC FACILITIES, | ) ) Magistrate Judge Poplin ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM & ORDER

Plaintiff, a prisoner proceeding pro se, has filed a complaint alleging a violation of 42 U.S.C. § 1983 [Doc. 2] and a motion to proceed *in forma pauperis* in this action [Doc. 1]. For the reasons below, Plaintiff's motion [Doc. 1] will be granted, and Plaintiff's claims will be dismissed.

### I. MOTION TO PROCEED *IN FORMA PAUPERIS*

According to the motion to proceed *in forma pauperis*, Plaintiff lacks sufficient financial resources to pay the filing fee. Accordingly, Plaintiff's motion to proceed *in forma pauperis* [Doc. 1] will be **GRANTED**.

Plaintiff is **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902 as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b) (1) (A) and (B). Thereafter, the

custodian of Plaintiff's inmate trust account is directed to submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk is **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Attorney General for the State of Tennessee. The Clerk is also **DIRECTED** to furnish a copy of this Order to the Court's financial deputy. This Order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II.      SCREENING OF COMPLAINT

### A.      Screening Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. 42 U.S.C. § 1983; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

Formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a claim upon which relief may be granted. *Twombly*, 550 U.S. at 570. However, courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

B.  **Allegations of Complaint**

Plaintiff, an inmate now housed at the Northeast Correctional Complex ("NECX"), was diagnosed with cervical spinal stenosis[1] and obstructive sleep apnea[2] by free-world physicians in 2017 [Doc. 2. p. 4]. Plaintiff was placed in the custody of the Tennessee Department of Correction ("TDOC") in 2019 [*Id*. at 3]. During the 2019 intake process, Plaintiff advised medical staff of his "extensive medical history" [*Id*. at 3-4].

---

[1] "Cervical spinal stenosis is a narrowing of the spinal canal and/or the spinal nerve root passages in your neck. When this narrowing occurs, your spinal cord and/or nerves may become compressed and cause symptoms such as pain, numbness, tingling and weakness in your neck, shoulders, and extremities." *See* Spineuniverse, *Cervical Spinal Stenosis*, https://www.spineuniverse.com/conditions/spinal-stenosis/cervical-spinal-stenosis-causes-symptoms-treatment (last accessed April 6, 2022).

[2] Obstructive sleep apnea is the most common sleep-related breathing disorder. It causes you to repeatedly stop and start breathing while you sleep. *See* Mayo Clinic, *Obstructive Sleep Apnea*, https://www.mayoclinic.org/diseases-conditions/obstructive-sleep-apnea/symptoms-causes/syc-20352090 (last accessed April 6, 2022).

Since his 2019 intake, Plaintiff has submitted multiple sick call requests concerning his medical issues [*Id*. at 4]. Medical staff have performed two x-rays on his neck and obtained records from Plaintiff's free-world spinal surgeon, who previously recommended fusion surgery [*Id*.]. However, the medical staff have done nothing for Plaintiff's condition beyond the x-rays, even though the stenosis has caused neuropathy in Plaintiff's hands and constant pain his neck and hands [*Id*.].

Likewise, Plaintiff's obstructive sleep apnea has gone untreated since 2019 and has potentially worsened Plaintiff's cardiac health [*Id*.]. Plaintiff was diagnosed in the free world with non-ischemic cardiomyopathy that has now progressed to ischemic cardiomyopathy, which could be because Plaintiff has suffered oxygen deprivation in his sleep due to his untreated apnea [*Id*.].[3] Plaintiff believes that a sleep study or CPAP machine would help his condition [*Id*.].

C.  Analysis

The United States Constitution does not guarantee a prisoner "unqualified access to healthcare." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). However, the denial of constitutionally adequate medical care violates the Eighth Amendment's prohibition against cruel and unusual punishment, which proscribes acts or omissions that produce an "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). An Eighth Amendment claim for the denial of adequate medical treatment is composed of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" medical need; and (2) a subjective

---

[3] Cardiomyopathy is a type of heart disease that prevents the heart from pumping blood correctly and generally worsens over time. There are two categories: ischemic (caused by heart attacks or coronary artery disease) and non-ischemic (types unrelated to coronary artery disease). *See* Cleveland Clinic, *Cardiomyopathy*, https://my.clevelandclinic.org/health/diseases/16841-cardiomyopathy (last accessed April 6, 2022).

component, which requires the plaintiff to show the defendants acted with "deliberate indifference" to that need. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). Negligence is insufficient to establish liability; deliberate indifference requires a mental state amounting to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40). Therefore, to establish an official's liability, a prisoner must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

A prisoner cannot state a claim of deliberate indifference by suggesting that he was misdiagnosed or not treated in a manner he desired. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995) (finding provider possibly negligent but not deliberately indifferent when unaware of prisoner's serious heart condition); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997) (finding "misdiagnoses, negligence, and malpractice" are not "tantamount to deliberate indifference"). As the Supreme Court has explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) (internal quotation marks omitted).

Further, where medical treatment has been provided, a prisoner's disagreement with the adequacy of care given does not implicate the Constitution. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1996). This is because "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Id.* Rather,

5

to state a constitutional claim, such a prisoner must show that his treatment was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2001).

Here, Plaintiff concedes that medical staff took x-rays and obtained his prior medical records related to his spinal condition, and the mere fact that no other intervention has been ordered, or that a surgery suggested by a free-world provider in 2017 has not been performed, is not in and of itself sufficient to support a plausible determination of deliberate indifference on the part of medical providers, particularly when Plaintiff himself did not find it necessary to seek surgical intervention for the condition between his diagnosis in 2017 and his incarceration in 2019. Similarly, Plaintiff's allegation that the progression of his cardiomyopathy "could" be related to his untreated sleep apnea, which "could" possibly be treated with additional intervention, is likewise insufficient to support a finding that Defendants have consciously chosen to ignore a risk to Plaintiff's medical needs. Moreover, the fact that Plaintiff has been diagnosed with a different form of cardiomyopathy since incarceration requires an inference that he has, in fact, been evaluated by a medical provider.

Plaintiff's "unadorned the- defendant-unlawfully-harmed-me" accusations are insufficient to impose liability. *Iqbal*, 556 U.S. at 678. While it may be *possible* that Defendants have acted with deliberate indifference to Plaintiff's serious medical needs, his speculative allegations that more or additional treatment is needed fails to render his claims *plausible*. *See, e.g., Twombly*, 550 U.S. at 570. Therefore, Plaintiff's allegations fail to state a claim upon which relief may be granted, and this action will be **DISMISSED**.

Out of an abundance of caution, the Court otherwise finds that Plaintiff cannot maintain a § 1983 suit against any of the named Defendants. TDOC is an arm of the State of Tennessee, and as such, a suit against TDOC is a suit against the State. *See Hix v. Tenn. Dep't of Corr.*, 196 F.

6

Case 3:22-cv-00118-CEA-DCP   Document 4   Filed 04/06/22   Page 6 of 8   PageID #: 18

App'x 350, 355 (6th Cir. 2006) (holding TDOC is equivalent of the "State"). However, "a State is not a person within the meaning of § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989); *Hix*, 196 F. App'x at 355 (holding TDOC is not a "person" within meaning of 1983). Additionally, the Eleventh Amendment prohibits suits against a state or its agencies in federal court for damages, unless Congress has abrogated its immunity, or the state has expressly waived it. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-101 (1984); *Quern v. Jordan*, 440 U.S. 332, 345 (1979). This immunity extends to claims for injunctive and equitable relief. *See Lawson v. Shelby Cty.*, 211 F.3d 331, 335 (6th Cir. 2000) ("[T]he [Eleventh] Amendment prohibits suits against a 'state' in federal court whether for injunctive, declaratory[,] or monetary relief.").

The State of Tennessee has not waived its immunity to suit under § 1983. *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983). Accordingly, Plaintiff cannot maintain suit against TDOC or its facilities, and these Defendants should otherwise be **DISMISSED**.

Centurion Medical Services and/or medical contract providers are also named as Defendants in this action [Doc. 2 p. 3]. However, Centurion, TDOC's medical contract provider, cannot be subject to § 1983 liability merely because it has employed someone who violated Plaintiff's constitutional rights; that is, it "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, to demonstrate that Centurion (or any other medical contract provider) bears any liability, Plaintiff must identify a policy or custom of the entity and show that his particular injury was incurred due to the execution of that policy. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation and quotation marks omitted); *see also Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (holding plaintiff must allege "a policy or well-settled

7

custom of the company was the 'moving force' behind the alleged deprivation" of his rights). Plaintiff has not set forth any facts from which the Court could infer that his constitutional rights were violated by a policy or custom of Centurion or any other medical contract provider, and these Defendants should likewise be **DISMISSED**.

### III.     CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set for above;

4. The Clerk is **DIRECTED** to mail a copy of this memorandum opinion and order to the custodian of inmate accounts at the institution where Plaintiff is now confined, to the Attorney General for the State of Tennessee, and to the Court's financial deputy;

5. Even with liberal construction, Plaintiff's complaint fails to state a claim upon which relief may be granted under 42 U.S.C. § 1983, and this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A; and

6. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED**.

/s/  *Charles E. Atchley Jr.*
**CHARLES E. ATCHLEY JR.**
**UNITED STATES DISTRICT JUDGE**